PAUL B. SNYDER
United States Bankruptcy Judge
1717 Pacific Ave, Suite 2209
Tacoma, WA 98402

✓ FILED
___ LODGED
___ RECEIVED

**June 21, 2007**

MARK L. HATCHER
CLERK U.S. BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
_____DEPUTY

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF WASHINGTON AT TACOMA**

In re:

PT CABLE, INC.,

          Debtor.

Case No. 05-42265

**MEMORANDUM DECISION**

**NOT FOR PUBLICATION**

This matter came before the Court for hearing on June 14, 2007, on the Second and Final Application for Allowance of Fees and Costs (Second Application) by Special Counsel Bucknell Stehlik Sato & Stubner, LLP (BSSS). An objection to the Second Application was filed by Donald J. Schroeder, David W. Walker and Terry A. Gunsel (PTC Entities). New York Life Insurance Company and New York Life Insurance and Annuity Corporation, Jefferson-Pilot Life Insurance Company and Jefferson-Pilot Financial Insurance Company (Lenders) joined in the PTC Entities' objection. Based on the pleadings and arguments presented, the Court's findings of fact and conclusions of law are as follows:

**FINDINGS OF FACT**

On October 4, 2005, the Chapter 7 Trustee (Trustee) filed a motion to employ BSSS as special counsel on a contingent fee basis. A joint objection to the motion to employ was filed

MEMORANDUM DECISION - 1

by AT&T Corp. and Alascom, Inc. After several hearings, the objection was resolved between the parties and an Order Approving Application to Employ Special Counsel was entered on November 22, 2005 (November 22, 2005 Order). The November 22, 2005 Order states that the objections by AT&T Corp. and Alascom, Inc. were withdrawn "as a result of the modifications to the proposed Contingent Fee Agreement which resulted from the further process and negotiations undertaken by the Trustee with respect to retaining special counsel." A copy of the Contingent Fee Agreement (Agreement), signed by the Trustee and BSSS, was attached to and approved in its entirety by the November 22, 2005 Order.

On November 21, 2006, BSSS filed an Application for Allowance of Fees and Costs by Bucknell Stehlik Sato & Stubner, LLP (First Application). In this First Application, BSSS sought a contingent fee of $2,207,611.84. The contingent fee was based on "net cash recoveries" of $13,172,574.01 to be received from a global settlement obtained as the result of a mediation before Honorable Edward A. Infante at Judicial Arbitration and Mediation Services in San Francisco, California (Settlement). BSSS also sought reimbursement of expenses and costs advanced in the amount of $32,996.99 through November 1, 2006, plus payment of the expert fees of Dr. Michael Tennenbaum of $11,929. In its First Application, BSSS reserved the right to seek additional compensation for non-cash recoveries, as defined in the Contingent Fee Agreement as this amount could not be determined until administration of the estate was complete and distributions to creditors could be calculated. BSSS also reserved the right to request reimbursement of additional costs and expenses. An order approving BSSS's First Application was entered on December 14, 2006. On that same date, the Court also entered an order approving the Settlement.

MEMORANDUM DECISION - 2

On May 18, 2007, BSSS filed its Second Application for fees and costs. In its Second Application, BSSS seeks fees of $299,280, based on value received by the estate due to a reduction of claims. BSSS also seeks additional fees of $33,600 related to a "true up" payment made by the PTC Entities, and $5,630.40 as a final cost reimbursement. The Second Application is objected to by the PTC Entities, whose objection is joined by the Lenders.

**CONCLUSIONS OF LAW**

The PTC Entities[1] object to BSSS's Second Application on the basis that a portion of the fees sought are related to a reduction of claims by parties that were not targets of or named defendants in the "Litigation" as defined in the Contingent Fee Agreement.[2] The PTC Entities do not object to the fees attributable to the reduction in claims of New York Life Insurance Co. and Kane Reece, who are listed in the Contingent Fee Agreement as potential defendants in the Litigation. Further, even if the fees attributable to the claims reductions of non-target and non-named defendants are covered by the Contingent Fee Agreement, the PTC Entities argue that BSSS is still not entitled to a fee because the claims reductions were not obtained due to the efforts of BSSS or as a result of the Litigation. For similar reasons, the PTC Entities also object to a fee based on the true up payment. No one has filed an objection to the request for reimbursement of additional costs.

---

[1] Since the Lenders have filed a Joinder in the PTC Entities' objection, any reference in the Memorandum Decision to objections to the Second Application by the PTC Entities would also apply to the Lenders.

[2] See the Recitals of the Contingent Fee Agreement, where it is stated: "Client wishes to investigate and pursue litigation (the "Litigation") against various parties arising out of transactions occurring in or about 1999 whereby PTC borrowed approximately $46.7 million of funds and distributed a similar amount of funds to various parties."

MEMORANDUM DECISION - 3

Accordingly, the issues before this Court can be summarized as follows: (1) does the Contingent Fee Agreement limit BSSS's fees to only cash or non-cash recoveries obtained from target or named defendants of the Litigation as defined therein, and (2) if it is not so limited, can BSSS demonstrate that the recoveries were obtained (a) as a result of the Litigation, and (b) through its efforts?

It is undisputed that BSSS was hired by the Trustee to pursue the Litigation as defined in the Contingent Fee Agreement. In his Application to Employ Special Counsel, the Trustee states that he "requires the services of special counsel to represent him regarding investigation and pursuing litigation against various parties expressly named in the Contingent Fee Agreement attached hereto." Application to Employ Special Counsel at 1 (Docket #220). The potential defendants of the Litigation are set forth in the Recitals of the Contingent Fee Agreement, recognizing, however, that the list may change as the "investigation by [BSSS] is completed." Contingent Fee Agreement at 1 (Ex. 1 to Docket #517).

The paragraph, however, setting forth the specific terms of the attorneys fees provisions in the Contingent Fee Agreement is paragraph 6. This paragraph provides as follows:

> <u>"Recovery" and "Net Recovery" Defined.</u> "Recovery" means the following actually received by or on behalf of the Estate through Attorneys' efforts as a result of settlement, partial settlement, orders and/or judgments entered in or as a result of the Litigation (which may be one or more proceedings), and only after all time to appeal with respect thereto has expired without a reversal of the result: (1) all cash and cash-equivalents actually received (collectively, "Cash"), plus (2) value actually realized by the Estate through cancellation or subordination of claims or preservation of avoided transfers (such cancellation or subordination of claims or preservation of avoided transfers hereinafter referred to, collectively, as "Cancellation.").

Contingent Fee Agreement at 4 (Ex. 1 to Docket #517).

MEMORANDUM DECISION - 4

Considerable weight should be given to the meaning the parties to the contract have placed upon it. See, e.g., Mercer Place Condo. Ass'n. v. State Farm Fire & Cas. Co., 104 Wash. App. 597, 602, 17 P.3d 626, 629 (2000). The two parties that executed the Contingent Fee Agreement are the Trustee and BSSS. Both of these parties have stated on the record and in their pleadings that they believe that the fees at issue are covered by the Contingent Fee Agreement. Although it is expected that BSSS would adopt this interpretation, the Trustee has no incentive to increase the fee award to BSSS. Even though BSSS was hired by the Trustee, the Trustee's primary interest is to maximize the dividend to unsecured creditors.

In addition, the plain language of the Contingent Fee Agreement does not support the interpretation urged by the PTC Entities. Nothing in paragraph 6 limits the basis for the fee to recoveries obtained only from defendants. Rather, in addition to the requirement that there actually be a "recovery", the two qualifiers are that the recoveries be through BSSS's efforts and as a result of settlement, etc., entered in or as a result of the Litigation. There is no dispute that there was a "recovery" in this case. The true up is a recovery under paragraph 6(a), in the form of cash actually received. The claims reductions are value actually received in the form of cancellation or subordination of claims as defined by paragraph 6(a). Neither of these sections contain any language limiting the fee to only recoveries received from defendants of the Litigation. The same is true of the hypothetical example set forth in the same paragraph to illustrate the calculation of "value actually realized by the Estate." This example speaks in terms of canceling claims of creditors of the estate, and again, is not limited to defendants in the Litigation. Thus, the Court concludes that the Contingent Fee

MEMORANDUM DECISION - 5

Agreement does not limit BSSS's right to fees to only those recoveries obtained from targets of or named defendants of the Litigation.

As stated above, whether BSSS is actually entitled to the fees at issue will depend on whether the recoveries were received as a result of settlement of the Litigation and through BSSS's efforts. At the June 14, 2007 hearing, the parties agreed that whether the recoveries were received through BSSS's efforts is an issue of fact that will require an evidentiary hearing. The same is true of the issue of whether the recoveries were received as a result of the Litigation. The Court concludes that for the recovery to be received as a result of the Litigation requires more than merely being part of a global settlement in which the Litigation was also resolved. The Contingent Fee Agreement specifically requires that the recoveries be received by the estate as a result of settlement "entered in or as a result of the Litigation."

On this issue, the parties have raised an issue of fact. For example, the PTC Entities argue that the recoveries at issue, and specifically the claims reductions by AT&T (holder of the largest claimed reduced in the Settlement), were negotiated independent of the settlement of the Litigation. According to the PTC Entities, the Litigation had already been resolved and that BSSS and the Trustee had left the mediation when the AT&T claim reduction and true up payment were negotiated. BSSS, on the other hand, argues that the settlement of at least the AT&T and Cable & Wireless claims were an integral part of the settlement of the Litigation. Specific information regarding the other claims at issue was not provided or argued. The declarations submitted by each side to support their position therefore raise an issue of fact as to whether the recoveries at issue were actually received by the estate as a result of the settlement of the Litigation.

MEMORANDUM DECISION - 6

The Court concludes that the Contingent Fee Agreement does not limit BSSS's fees to recoveries from targets of or named defendants of the Litigation. The issue of whether such fees were received by or on behalf of the estate "through [BSSS's] efforts" and as a result of settlement entered in or "as a result of the Litigation" are issues of fact that require an evidentiary hearing.

DATED: June 21, 2007

*Paul B. Snyder*
_____
Paul B. Snyder
U.S. Bankruptcy Judge